IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MALIK SHAHEEN,               )
                            )
            Plaintiff,       )
                            )
        v.                   )      Case No. 09 CV 5279
                            )
ALTIVITY PACKAGING, LLC and  )      MAGISTRATE JUDGE
SMURFIT STONE CONTAINER      )      ARLANDER KEYS
ENTERPRISES,                 )
                            )
            Defendants.      )
----------------------------)
GRAPHIC PACKAGING            )
INTERNATIONAL, INC.,         )
                            )
        Third Party Plaintiff )
        v.                   )
                            )
AMCO INDUSTRIES, INC.,       )
                            )
        Third Party Defendant )

**Memorandum Opinion and Order**

Plaintiff, Malik Shaheen, filed suit against Defendant[1],

Graphic Packaging International, Inc. ("GRAPHIC") after suffering

a spinal injury allegedly as a result of GRAPHIC's negligence.

GRAPHIC filed a Third-Party Complaint against Mr. Shaheen's

employer, Amco Industries ("AMCO"), which was granted by this

Court on 2/22/2010 [28].  GRAPHIC now moves for summary judgment,

arguing that Plaintiff relies on speculation and that his

_____

[1]Captioned Defendant, Smurfit Stone Container Enterprises, was
voluntarily dismissed on 8/21/2009 [9]. Graphic Packaging
International,Inc. was sued herein improperly as Altivity Packaging,
LLC. The correct name of the Defendant is Graphic Packaging
International, Inc. [28].

injuries were solely caused by a naturally occurring, open and obvious accumulation of rain and mud for which Defendant has no duty. For the reasons set forth below, Defendant's Motion for Summary Judgment [67] is denied.

## Background

The undisputed relevant facts are as follows. In 2006, Mr. Shaheen was hired by Third-Party Defendant, AMCO, as a Service Technician and worked in this capacity up to and including the date of the accident on March 21, 2007. (Def.'s R. 56.1 Statement ¶ 8.) As part of Mr. Shaheen's daily duties, he was required to service compressors, which included changing oil filters, replenishing oil levels in the compressors as well as general service and maintenance work on compressors. (*Id.*) Larry Brown was employed as a Service Manager for AMCO. (Def.'s R. 56.1 Statement ¶ 13.) Prior to Mr. Shaheen being hired by AMCO, Mr. Brown regularly serviced the compressors in GRAPHIC's powerhouse. (*Id.*) Mr. Brown developed a 16-point inspection plan sheet, and in early 2007, Mr. Brown trained Mr. Shaheen to assume compressor maintenance at GRAPHIC. (Brown Dep. 45-49.)

Consistent with the training provided by Mr. Brown, Mr. Shaheen completed and signed the 16-point sheet while performing his service and maintenance duties inside the powerhouse at GRAPHIC. (Shaheen Dep. 54,56, July 11, 2011.) Mr. Shaheen often noted excessive oil on the floor in the powerhouse, as did Mr.

Brown in his prior service trips to GRAPHIC. (Ex. O, March 2007 Inspection Sheets; Brown Dep. 36-38.) Some oil running off the machine and under its base is not abnormal, as Mr. Brown explained the compressors are running with a lubricating oil throughout the entire system, "[a]nd on occasions, it will spring a leak...and end up on the floor." (Brown Dep. 35-36.) Mr. Shaheen noted that the oil in GRAPHIC's powerhouse, however, often extended beyond the base of the compressors, oozing into the walking aisles of the floor. (Shaheen Dep. 99, July 11, 2011.) GRAPHIC never provided any mechanism that afforded Mr. Shaheen an opportunity to clean the oil from his shoes. (Id. at 81-102.) Prior to March 21, 2007, the date of Mr. Shaheen's accident, Mr. Shaheen had been dispatched to GRAPHIC to inspect, service or otherwise maintain the compressors in the powerhouse facility an estimated 8 to 10 times. (Def.'s R. 56.1 Statement ¶ 9.) On each of these 8 to 10 previous servicing visits, Mr. Shaheen used the "gray set of doors" ("gray doors") at the rear, South end of the facility to gain entrance to the compressor room. (Id.) Mr. Shaheen's accident occurred outside of those gray doors. (Id.)

To gain entry to the gray doors at issue, Mr. Shaheen would park his vehicle on a service road adjacent to the facility and would walk up a slight incline of grass and dirt. (Def.'s R. 56.1 Statement ¶ 11.) On each of his prior service trips, Mr.

Shaheen walked up and down the grassy incline without slipping or falling. (*Id.*) Mr. Shaheen never complained to GRAPHIC's staff regarding the condition of the area outside the gray doors. (*Id.*) Mr. Shaheen was aware that there are multiple entrances to the facility, including a covered entrance dock door approximately 160 to 170 feet away from the gray doors. (*Id.* at ¶ 12.) AMCO employees were told to use the covered entrance leading to the dock doors when they were moving large equipment. (*Id.* at ¶ 14.)

On March 21, 2007, Mr. Shaheen was dispatched to GRAPHIC to service the compressors and was accompanied by his manager and an AMCO sales representative. (Def.'s R. 56.1 Statement ¶ 15.) It rained in the 24-hour period of time before Plaintiff and his co-workers arrived at GRAPHIC, and the ground outside of the facility near the gray doors was wet. (*Id.* at ¶ 16.) As Mr. Shaheen entered through the gray doors without incident, he noticed the ground was wet and that there was mud in the area outside of the gray doors at issue. (*Id.* at ¶ 17.)

Upon completing his work inside, Mr. Shaheen carried a bucket of tools weighing approximately 30 to 50 pounds in his right hand as he exited GRAPHIC through the same gray doors he had earlier entered. (Def.'s R. 56.1 Statement ¶ 19.) As he exited the gray doors, Mr. Shaheen noticed the wet mud and that he would need to exercise caution, however, he slipped before

making it back to his vehicle.  (*Id.* at ¶ 19.)

After slipping, Mr. Shaheen got into his vehicle and drove approximately 45 minutes to AMCO's office, where for the first time he sat down and looked at the bottom of his boots.  (Def.'s R. 56.1 Statement ¶ 31.)  Mr. Shaheen explained that he saw mud and grass on the bottom of his boot, and oil on the top.  (*Id.* at ¶ 32.)  Mr. Shaheen cleaned the work boots he wore the day of the accident "a week or two" later.  (*Id.* at ¶ 34.)  He testified to removing both mud and oil from his boots at that time.  (*Id.*)

## Standard of Review

Summary judgment is proper if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A genuine issue of material fact exists if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Though this standard places the initial burden on the moving party, once it has met this burden of production, the nonmoving party "may not rely merely on allegations or denials in its own pleading," but instead must "set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e).  When deciding whether summary judgment is proper, the Court must

accept the nonmoving party's evidence as true and draw all inferences in favor of that party, here the Plaintiff, Mr. Shaheen. *See Anderson*, 477 U.S. at 255.

In order to successfully oppose a motion for summary judgment, the nonmoving party must do more than raise a metaphysical doubt as to the material facts. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586. (1986). Rather, they must come forward with specific facts showing that there is a genuine issue for trial. *Id.* at 587. The nonmoving party must offer more than a mere scintilla of evidence to survive summary judgment, and conclusory allegations are insufficient to defeat a motion for summary judgment. *Keri v. Bd. of Trustees of Purdue Univ.*, 458 F. 3d 620, 628 (7th Cir. 2006).

## Discussion

GRAPHIC asserts that summary judgment in this case is proper because, instead of utilizing the reasonably safe alternative entrance to its facility, Mr. Shaheen assumed the risk of using the gray doors with a nearby, open and obvious accumulation of rain and mud in which he slipped and that Defendant, therefore, owes no duty to the Plaintiff. Moreover, GRAPHIC contends it should not be held liable, as there is no evidence that oil from its facility contributed to Mr. Shaheen's slip and resulting injury. Mr. Shaheen concedes that, although he knew the ground was muddy and likely slippery, he continued to use the gray door

6

entrance because it was the closest ingress and egress to the compressors and that the deliberate encounter exception to the open and obvious rule applies to the facts of this case. Additionally, Plaintiff opines that chronic oil leaks at GRAPHIC's facility indeed contributed to his slip and resulting injury. Construing the evidence in the pleadings and depositions in the light most favorable to Mr. Shaheen, there remains an issue of fact as to whether the Defendant could have anticipated that the Plaintiff would proceed to encounter the known and obvious danger, *i.e.*, the wet and muddy gray doors entrance/exit, where, to a reasonable man in the Plaintiff's position, the advantages of doing so would outweigh the apparent risk.

Finally, the Court finds a patent factual dispute regarding oil contributing, or not, to the conditions causing Mr. Shaheen's slip. Thus, the Court cannot hold as a matter of law that there are no genuine issues of material fact. Therefore, this case should proceed to trial.

## I. The Open and Obvious Doctrine - The Deliberate Encounter Exception

GRAPHIC seeks to persuade the Court that, by providing an alternative covered entrance, all liability is precluded as Plaintiff had a safe means of entry but instead assumed the risk of entering and exiting through an "open and obvious" natural accumulation of mud on its property. GRAPHIC's reliance upon the

open and obvious doctrine is faulty, as the well known "deliberate encounter" exception to the open and obvious rule is wholly ignored by the Defendant. Under the deliberate encounter exception, a duty is imposed when a possessor of land "has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantage of doing so would outweigh the apparent risk." *Restatement (Second) of Torts § 343A*, Comment *f*, at 220 (1965). Liability under this exception stems from the landowner's knowledge of the premises, and what the landowner had reason to expect the invitee would do in the face of the dangerous condition. *LaFever v. Kemlite Co.*, 185 Ill.2d 380, 392, 235 Ill.Dec. 886, 706 N.E.2d 441 (1998).

It is undisputed that GRAPHIC made available to its service personnel the covered, dock door entrance and that previous AMCO employees used the ramp when moving large equipment. However, the alternative doors' existence is not the crux of the duty issue, instead, it is whether it was reasonably foreseeable to GRAPHIC that Mr. Shaheen would use the gray door entrance despite him knowing of an open and obvious condition. GRAPHIC misses the point by relying upon *Radovanovic v. Wal-Mart Stores East, Inc.*, 2006 WL 305890 (N.D. Ill.2006), which focuses solely on the existence of a safe alternative entrance, rather than analyzing the invitee's chosen entrance or the alternative entrance's

practical accessibility, which in the instant case, was admittedly over 160 feet further away from the most convenient entrance to the compressors. At least one Illinois court has concluded that the  existence of a duty is not determined by the presence or lack of alternative avenues by which to avoid an open and obvious danger but, rather, by whether the landowner could foresee whether despite the open and obvious nature of the condition, the plaintiff (with or without alternative means) would nevertheless have chosen to encounter that condition. *Morrisey v. Arlington Park Racecourse, LLC.*, 404 Ill.App3d 711, 727 (1st Dist. 2010).

Quite similar to the instant case, the plaintiff in *Ralls* was injured when he slipped and fell on a snow covered incline at a construction site.  *Ralls v. Village of Glendale Heights*, 233 Ill.App3d 147 (1st Dist. 1992), 174 Ill.Dec. 140, 598 N.E.2d 337. The Appellate Court found that it was reasonably foreseeable that a construction worker at the site would use the snow-covered incline to reach the south door of the blower building, rather than use "the longer and inconvenient perimeter path."  *Id.* at 155.  Accordingly, the court concluded that it was reasonably foreseeable that workers would use the "*shortest path* to the southern door of the blower building." (Emphasis added.)  *Id.* at 156.

The Court finds a genuine issue of fact exists surrounding

GRAPHIC's reasonable anticipation that Mr. Shaheen would continue to use the shortest path via the gray doors despite the open and obvious condition in entering and exiting them.  Therefore, the Court finds sufficient evidence presented by Mr. Shaheen to preclude summary judgment on the issue of whether the Defendant could have foreseen that the Plaintiff would use the gray doors despite the dangerous condition therein.

## II. Genuine Issue of Oil

GRAPHIC's final contention is that, concluding from the evidence in the case presented thus far that Mr. Shaheen's slip was proximately caused by oil, would require speculation, and that liability cannot be predicated upon speculation and conjecture as to the cause of the injury. While Defendant is accurate in its latter statement, the Court disagrees with its first. Mr. Shaheen has provided enough specific evidence regarding the presence of oil to at least advance beyond mere speculation and create a genuine issue for trial.

As set forth in the factual background above, Mr. Shaheen had been documenting the excessive presence of oil on the floors and aisle-ways of GRAPHIC's compressor room throughout the early portion of 2007, and even on the date of the accident, he confirmed on his 16-point inspection sheet that oil was present. (Ex. O, March 2007 Inspection Sheets)  Before Mr. Shaheen worked for AMCO, Mr. Brown testified to regularly observing excessive

amounts of oil on the floor of GRAPHIC's facility.  (Brown Dep.
36-38.) Mr. Shaheen looked at his boot approximately 45 minutes
after his slip and observed oil there. Lastly, upon finally
cleaning his boots, approximately a week to two after the
accident, Mr. Shaheen testified that he removed both mud and oil
from both boots.

GRAPHIC relies upon the *Kimborough v. Jewel Companies, Inc.*,
92 Ill.App.3d 813 (1st Dist. 1983) decision in order to discount
Mr. Shaheen's contention that oil contributed to his slip.
However, GRAPHIC's reliance is misplaced, as the facts of
*Kimborough* are distinguishable from the instant matter and fails
to persuade the Court that the presence of oil is not a material
issue of fact in this case which should be decided during trial.
In *Kimborough*, the plaintiff could not prove any causal
connection between the property and her fall.  *Id.*  Although she
noticed grease spots on the ramp after she fell, the plaintiff
never came into contact with the grease and never looked at her
shoes to see if there was grease present.  *Id.* at 816.
Conversely, Mr. Shaheen has direct evidence from his inspection
sheet that excessive oil was present on several prior occasions,
including the day of his accident. He also looked at his boots
soon after his accident and observed oil on the top. And after
cleaning his boots, Mr. Shaheen testified to actually removing
both oil and mud.

Because GRAPHIC has not met its initial burden, and Mr. Shaheen has provided more than a mere scintilla of evidence from which a reasonable jury could possibly return a verdict for the Plaintiff, the Court does not find summary judgment for GRAPHIC proper.

## Conclusion

For the reasons set forth above, Defendant's Motion for Summary Judgment [67] is denied.

Date: January 5, 2012          E N T E R E D:

_Arlander Keys_
MAGISTRATE JUDGE ARLANDER KEYS
UNITED STATES DISTRICT COURT